**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION**

| | |
|---|---|
| John Doe (a fictitious name)<br>c/o Feldman Shepherd Wohlgelernter Tanner<br>Weinstock & Dodig LLP<br>1845 Walnut Street, 21st Floor<br>Philadelphia, PA 19103<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ARCHDIOCESE OF PHILADELPHIA<br>222 North 17th Street<br>Philadelphia, PA 19103<br><br>　　　　　Defendants. | Civil Action No.<br><br><br>**COMPLAINT**<br><br><br><br>**Jury Trial Demanded** |

## I.　　THE PARTIES

1.　　Plaintiff, John Doe (a fictitious name), is a pseudonymous designation for a plaintiff who was a victim of criminal sexual abuse while he was still a minor.  The "John Doe" designation is being used throughout the caption and body of this Complaint to protect the health, safety, welfare, and privacy interests of the plaintiff herein.  His identity will be made known to the defendants by private, non-public communication.

2.　　Plaintiff herein is an adult male individual and resident of the State of Arizona.

3.　　At the time of the events described in this Complaint, plaintiff was a minor. Because plaintiff was born on January 16, 1968, this action has been timely filed pursuant to N.J.S.A. §2A:14-2a.

4.　　Defendant, Archdiocese of Philadelphia (hereinafter sometimes referred to as "Archdiocese"), was, and continues to be, a non-profit religious corporation doing business as an organized religion with activities including, but not limited to, the ownership, management, and

operation of parishes and Catholic schools with its principal place of business located at 222 N. 17th Street, Philadelphia, Pennsylvania.

5.      At all times material hereto, upon information and belief, the Archdiocese of Philadelphia owned, operated, and maintained real estate holdings in the State of New Jersey including, but not limited to, a summer vacation home for retired priests, Villa St. Joseph by the Sea, which was located at 114 South Princeton, Avenue, Ventnor, New Jersey 08046.

6.      At all times material hereto, Defendant Archdiocese acted by and through its agents, servants, and employees including, but not limited to, Cardinal Anthony Bevilacqua, Cardinal Justin Rigali, and Cardinal John Joseph Krol, who was Archbishop of the Archdiocese from 1961 through 1988.

7.      At all times material hereto, plaintiff was a parishioner of Defendant Archdiocese at the parish of St. John the Evangelist located in Lower Makefield, Pennsylvania, where he attended grade school, served as an altar boy, and worked in the rectory.

8.      Defendant Archdiocese, occupying a position of authority and control of plaintiff, a pre-teen student, owed plaintiff a duty to exercise that control reasonably and responsibly, and to ensure that others within the Archdiocese were properly exercising that authority.

## II.      VENUE AND JURISDICTION

9.      This Court has original jurisdiction over this action under 28 U.S.C. §1332, in that the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) and plaintiff is a citizen of a state that is different from the state where defendant is incorporated and has its principal place of business.

10.     Venue is proper in this district, because some of the acts of sexual abuse at issue in this Complaint occurred in Forked River, New Jersey, in Ocean County, which falls within the jurisdiction of this Court.

## III.     FACTUAL BACKGROUND

11.     At all times relevant hereto, Defendant Archdiocese operated multiple parishes and schools in Philadelphia County and the surrounding counties.

12.     The schools included elementary and middle schools with a student population of teenaged and pre-teen children.

13.     The Archdiocese owed a duty to the children left in its custody and control, including plaintiff herein, to provide a reasonably safe environment for them, to ensure their safety, and to provide reasonably necessary supervision and oversight for their safety and welfare.

14.     The Archdiocese occupied a special relationship to the children left in its custody and control, including plaintiff herein, and owed to them the highest duty of care to ensure their safety and well-being.

15.     Defendant Archdiocese occupied a position of *in loco parentis*, and were under a duty to protect plaintiff, and to provide him with safety and supervision akin to that which would have been provided by his own parents.

16.     As set forth in this Complaint, the Archdiocese failed to fulfill its legal duty to provide a reasonably safe environment for the students left in its custody, care, and/or control.

17.     The Archdiocese had a duty to take reasonable steps to ensure that clergy members were psychologically fit to supervise, instruct, and mentor the students.

18.     To the contrary, the Archdiocese assigned to positions within the clergy individuals who it knew, and/or had reason to know, to be pedophiles, child molesters, sexual predators, and mentally-ill.

19.     These assignments were neither infrequent nor unusual.  As recognized by a Special Criminal Grand Jury empaneled by the City of Philadelphia, over the preceding thirty-five years, one hundred and twenty (120) priests serving the Archdiocese had been accused of sexually abusing hundreds of adolescents and younger children, and that, with rare exceptions, the Archdiocese did not report these accusations to police or to other public authorities.

20.     Defendant Archdiocese regularly, routinely, and/or frequently assigned, re-assigned, or transferred priests who had been credibly accused of molesting children to new assignments where they retained access to, and control over, children.

21.     As a result of defendant's negligent, careless, reckless, and intentional acts and omissions, plaintiff, along with countless other children, was forcibly sodomized, anally and orally raped, and sexually abused by a depraved predator and molester, who exploited his position in the clergy.

22.     As set forth in this Complaint, Defendant Archdiocese failed to take reasonable steps to ensure that clergy members of the Archdiocese were psychologically fit to supervise, instruct, and mentor students in the Archdiocese schools.

23.     Defendant Archdiocese knowingly employed, retained, and assigned clergy who they knew, and/or had reason to know, were psychologically unfit to supervise, instruct and mentor students.

24.     The Archdiocese employed, retained, and assigned clergy who it knew or should have known were pedophiles, sexual predators, and/or mentally ill.

25.     Defendant Archdiocese failed to take reasonable steps to ensure that clergy in the Archdiocese schools and churches were psychologically fit to supervise, instruct, and mentor students in those schools.  These failures included the following:

        a.      failure to investigate the background of clergy in its employ or service;

        b.      failure to prohibit, restrict, or limit the activities of clergy suspected of sexual abuse and/or those known to be sexual abusers;

        c.      failure to reasonably and properly investigate allegations of sexual molestation and/or child abuse;

        d.      failure to properly train and instruct investigators;

        e.      failure to have in place standards of acceptable and unacceptable conduct;

        f.      failure to designate competent investigators to evaluate complaints of sexual abuse; and

        g.      failure to have in place standards for reporting acts of sexual misconduct to law enforcement authorities, parents, and/or parishioners.

26.     Defendant Archdiocese employed, retained, and/or assigned teachers who they knew, or should have known, were pedophiles, sexual predators, and/or mentally ill.

27.     The Archdiocese employed, retained, and assigned priests and other clergy whose services frequently placed them into close contact with children outside the presence of other adults.

28.     The Archdiocese had a duty to take reasonable steps to ensure that the priests and other clergy whose duties placed them in close proximity to children were psychologically fit to perform those duties without jeopardizing the safety of the children.

29.     The Archdiocese had a duty to take reasonable steps to supervise the mentoring and other interactions between its priests and the children left in their care and custody.

30.    The Archdiocese employed, retained, and assigned priests who it knew and/or had reason to know were psychologically unfit to supervise, instruct, and mentor children.

31.    The Archdiocese employed, retained, and assigned priests who it knew, or should have known, were pedophiles, sexual predators, and/or mentally ill.

32.    Defendant Archdiocese employed deliberate strategies to conceal known abuse by priests and other persons in the employ or service of the Archdiocese.  These strategies included the following:

a.    conducting sham investigations which were designed to avoid establishing culpability of priests accused of sexual abuse;

b.    failing to interview witnesses or persons who may have possessed information which might tend to establish guilt of an accused priest;

c.    routinely transferring priests suspected of sexual abuse, child abuse, molestation, or pedophilia to other parishes;

d.    deliberately and aggressively investigating claimants who leveled allegations against priests rather than investigating the priests themselves;

e.    purposefully failing to inform parishioners of the acts of sexual misconduct and/or allegations of same, despite circumstances which gave rise to a duty to disclose such information;

f.    knowingly harboring priests from other diocese who were suspected of sexual misconduct;

g.    purposefully refusing to notify law enforcement officials when there existed reasonable grounds to believe that an Archdiocese priest or teacher had engaged in improper sexual conduct with children;

h.    purposefully destroying record evidence of misconduct by priests or other Archdiocese personnel;

i.    publicly promising not to assign priests who have been diagnosed as pedophiles or ephebophiles, but then ensuring that Church-affiliated treatment centers would not diagnose priests as such;

      j.     purposefully withholding incriminating information from therapists to make it more difficult for priests to be diagnosed as pedophiles or ephebophiles; and

      k.    creating "limited ministries" for priests diagnosed as pedophiles but failing to enforce the limitations supposedly imposed on such priests.

33.    Defendant outrageously employed these strategies knowing that they exposed children, including plaintiff herein, to a significant risk of serious physical and psychological harm, including a significant risk of rape, anal rape, and sodomy.

## IV.    FACTS GIVING RISE TO THE CAUSE OF ACTION

34.    Father James J. Brzyski was a priest at St. John the Evangelist having been assigned there at the direction of the Archdiocese in 1977.

35.    At all times relevant hereto, Father James J. Brzyski acted as an agent, servant, and/or employee of Defendant Archdiocese, which is vicariously liable for his acts and/or omissions.

36.    Defendant Archdiocese assigned Father Brzyski to St. John the Evangelist without sufficiently and adequately investigating his background, qualifications, and fitness to interact with minors, and failed to assess whether he posed a risk of harm to children left in his custody.

37.    Even when informed that Father Brzyski was engaged in conduct that should have raised concerns as to whether he was behaving appropriately, Defendant Archdiocese failed to take any action to investigate and/or better supervise Father Brzyski and/or terminate his assignment.

38.    Plaintiff was a ten-year-old altar boy at St. John the Evangelist in 1978 and was in the custody of Father Brzyski.

39.    Father Brzyski occupied a position of authority and control over plaintiff as a consequence of his assignment by Defendant Archdiocese.

40.     Father Brzyski used his position of authority, control, and power so as to command plaintiff to perform repulsive and abusive acts of sexual grooming and sexual abuse.

41.     Father Brzyski's began sexually grooming the plaintiff while he was serving as an altar boy at St. John the Evangelist in 1978.

42.     Initially, Father Brzyski assisted plaintiff while changing his altar boy garments, at which time Father Brzyski massaged various part of plaintiff's body including, but not limited to, his stomach, shoulders, and legs.

43.     Eventually, while assisting plaintiff changing his garments, Father Brzyski began to rub and/or fondle plaintiff's penis on the outside of his pants and, eventually, underneath his pants.

44.     While alone with plaintiff, Father Brzyski routinely made plaintiff sit on his lap, at which time Father Brzyski would rub his erect penis against plaintiff's anus while they both were fully clothed.

45.     Father Brzyski's sexual grooming and sexual abuse of plaintiff progressed to the point of both anal and oral rape, which occurred hundreds of times from 1978 through 1982.

46.     Father Brzyski's sexual abuse of plaintiff occurred in the sacristy, rectory, and office of St. John the Evangelist, and while on regular summer trips to a beach home in Forked River, New Jersey.

47.     Upon information and belief, Defendant Archdiocese knew or had reason to know that predator priests, including Father Brzyski, routinely traveled to New Jersey with their minor parishioners and/or students for the purpose of sexual grooming and/or sexual abuse.

48.     As a direct and proximate result of the sexual assaults by Father Brzyski, plaintiff suffered physical and emotional injuries, as set forth in this Complaint.

49.     As a direct and proximate result of the sexual assaults described above, plaintiff sustained physical trauma, including traumatic physical injury to his anus associated with forcible sexual acts of Father Brzyski.

50.     In addition to the physical trauma of the acts of forcible oral and/or anal rape and sodomy perpetrated by Father Brzyski, plaintiff also sustained severe psychological and emotional distress, including post-traumatic stress disorder, manifested by physical ailments and complaints, including, but not limited to headaches, nausea, and sleeplessness.

51.     Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, and has suffered and continues to suffer spiritually.

52.     As a further direct and proximate result of the defendant's misconduct as set forth in this Complaint, plaintiff was prevented, and will continue to be prevented, from performing his customary daily activities and obtaining the full enjoyment of life, has sustained and continues to sustain a loss of earnings and earning capacity, and/or has incurred, and will continue to incur, expenses for medical and psychological treatment, therapy, and counseling.

53.     All the above physical, psychological, and emotional injuries were proximately caused by the sexual assaults committed by Father Brzyski, as well as the negligence, carelessness, recklessness, and other tortious and outrageous conduct of the Defendant Archdiocese as set forth in this Complaint.

## V.    PLAINTIFF'S CAUSES OF ACTION

### COUNT ONE – VICARIOUS LIABILITY
### PLAINTIFF v. ARCHDIOCESE OF PHILADELPHIA

54.    Plaintiff incorporates the averments of the preceding paragraphs as if each was set forth herein at length.

55.    Father James J. Brzyski committed the acts that are the subject of this Complaint while acting as the agent, servant, and/or employee of Defendant Archdiocese pursuant to the Restatement (Second) of Agency §219.

56.    The acts committed by Father James J. Brzyski, which are the subject of this Complaint, were committed by James J. Brzyski within the course and scope of his agency, employment, and/or service within the Archdiocese, which is vicariously liable for his actions pursuant to the Restatement (Second) of Agency §219.

57.    Defendant Archdiocese authorized the acts which are the subject of this Complaint and/or ratified said acts.

58.    As set forth in the Grand Jury Reports, the incidence of pedophiles, sexual predators, child molesters, and/or mentally ill individuals in the Archdiocese's service or employment were neither isolated nor unusual.

59.    As recognized in the Grand Jury Reports, the Archdiocese has, for decades, failed to reprimand, punish, report, or otherwise sanction clergy which it knew or had reason to know were pedophiles, sexual predators, child molesters, and/or mentally ill.

60.    The Archdiocese's knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of pedophiles, sexual predators, child molesters, and/or mentally ill individuals, constituted a course of conduct through which acts of sexual perversion and the violation of childhood innocence were condoned, approved, and effectively authorized.

61.     Through its failure to timely reprimand and sanction the acts referenced in this

Complaint, and for all the other reasons set forth in this Complaint including, without limitation,

its failure to take the steps necessary to prevent the occurrence of such reprehensible acts, the

Archdiocese ratified said actions and, accordingly, is vicariously liable for the actions of James J.

Brzyski.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of

the jurisdictional threshold for compensatory damages, punitive damages, delay damages, interest,

and allowable costs of suit.

## COUNT TWO – NEGLIGENCE
## PLAINTIFF v. ARCHDIOCESE OF PHILADELPHIA

62.     Plaintiff incorporates the averments of the preceding paragraphs as if each was set

forth herein at length.

63.     As set forth in this Complaint, Defendant Archdiocese subjected plaintiff to cruel

and unjust hardship in conscious disregard of plaintiff's rights.

64.     Prior to the sexual abuse and battery of plaintiff, as set forth in this Complaint,

Defendant Archdiocese knew that members of its clergy and teaching staff had reportedly sexually

molested children, committed acts of violence upon children, or otherwise preyed upon children.

A select number of the reported instances of sexual molestation, violence, and pedophilia are set

forth in the Report of the Grand Jury.

65.     Defendant Archdiocese knew, and/or should have known, that those individuals

who had sexually molested and abused children were likely to commit further acts of sexual abuse

and molestation.

66.     Defendant Archdiocese owed to the public in general, and plaintiff in particular, a

duty to reasonably identify, remove, and/or report (to law enforcement authorities and/or parents)

individuals who it knew, or should have known, were child molesters, pedophiles, and/or sexual predators in its service and employ.

67.     Defendant Archdiocese owed to the pubic in general, and to plaintiff in particular, a duty to reasonably supervise and/or monitor individuals who it knew, or should have known, were child molesters, pedophiles, and/or sexual predators in its service and employ.

68.     At all times relevant hereto, Defendant Archdiocese did not have in place, or failed to enforce, adequate, reasonable, and necessary rules, regulations, policies, and procedures which could effectively identify, and deal with, child molesters, pedophiles, and/or sexual predators.

69.     Despite actual knowledge of multiple instances in which child molesters, pedophiles, and sexual predators were assigned to positions with in the clergy and Archdiocese schools, and despite the foreseeable risk that said child molesters, pedophiles, and sexual predators would engage in repeated acts of sexual perversion and abuse, Defendant Archdiocese did not have in place (or failed to enforce) adequate, reasonable, and necessary rules, regulations, policies, and procedures that could effectively identify, and deal with, child molesters, pedophiles, and/or sexual predators.

70.     At all times relevant hereto, Defendant Archdiocese did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures for the removal of child molesters, pedophiles, and/or sexual predators in the employ and/or service of the Archdiocese.

71.     At all times relevant hereto, Defendant Archdiocese did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures that provided for the reporting to criminal authorities child molesters, pedophiles, and/or sexual predators in the employ and/or service of the Archdiocese.

72.    At all times relevant hereto, Defendant Archdiocese did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures which provided for the reporting to parents of children enrolled in Archdiocese schools or members of Archdiocese parishes of the presence of child molesters, pedophiles, and sexual predators in the employer and/or services of the Archdiocese.

73.    The Archdiocese had a duty to take reasonable steps to supervise the instruction, mentoring, and interactions between its clergy and its students.

74.    As set forth in this Complaint, the Archdiocese failed to fulfill its legal duty to supervise the instruction, mentoring, and interactions between its clergy and its students.

75.    The Archdiocese inadequately supervised the instruction, mentoring, and interactions between students and individuals acting on behalf of the Archdiocese who Defendant Archdiocese knew and/or had reason to know to be pedophiles, child molesters, sexual predators, or mentally ill.

76.    Having taken custody of plaintiff under circumstances such as to deprive him of his entitlement to safe care and protection, the Archdiocese owed to plaintiff a duty to aid and/or protect him and to control the actions of third parties, as set forth in Restatement (Second) of Torts §§314(A), 315.

77.    As set forth in this Complaint, the Archdiocese failed to fulfill its legal duty to protect plaintiff from the depraved and vile acts of its priest.

78.    Having taken custody of plaintiff under circumstances such as to deprive him of his normal opportunities for protection, the Defendant Archdiocese owed to plaintiff a duty to control the acts of its agents, servants, and/or employees.

79.     As set forth in this Complaint, the Archdiocese failed to take reasonable steps to ensure that teachers and clergy in its schools and churches were psychologically fit to supervise, instruct, and mentor students in its schools.  These failures include the following:

a.     failure to investigate the background of clergy in its employ or service;

b.     failure to prohibit, restrict, or limit the activities of clergy suspected of sexual abuse and/or those known to be sexual abusers;

c.     failure to reasonably and properly investigate allegations of sexual molestation and/or child abuse;

d.     failure to properly train and instruct investigators;

e.     failure to have in place standards of acceptable and unacceptable conduct;

f.     failure to designate competent investigators to evaluate complaints of sexual abuse;

g.     failure to have in place standards for reporting acts of sexual misconduct to law enforcement authorities, parents, and/or parishioners.

80.     The Archdiocese, having advertised and promoted itself as an instrument of Christ's Church on earth, explicitly and/or implicitly represented to the public in general, and to plaintiff and his parents in particular, that the clergy in its employ and service were not only psychologically fit but were also men of high moral integrity who could be entrusted with the safety and well-being of children.

81.      The Archdiocese made these explicit and implied representations knowing that they were false and/or having reason to believe that they were false, and with the expectation that they would be relied upon by parents making decisions regarding the religious and educational upbringing of their children.

82.     At all times relevant hereto, Defendant Archdiocese did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures with respect to the removal

and/or supervision of individuals in its employ or service who were suspected of being child molesters, pedophiles, and/or sexual predators.

83. Defendant Archdiocese failed to reasonably identify, remove, and/or report (to law enforcement authorities and/or parents) child molesters, pedophiles, and/or sexual predators in its service and employ.

84. Defendant Archdiocese failed to reasonably supervise and/or monitor individuals who it knew, or should have known, were child molesters, pedophiles, and/or sexual predators in its service and employ.

85. Defendant Archdiocese negligently, carelessly, and/or intentionally failed to timely and reasonably identify, remove, and/or report (to law enforcement authorities and/or to parents) Father James J. Brzyski as a child molester, sexual predator, and/or pedophile.

86. Defendant Archdiocese negligently and carelessly failed to properly, adequately, and reasonably investigate the competence and fitness of Father James J. Brzyski before assigning him and/or permitting him to continue in assignments to positions that placed him in contact with vulnerable children.

87. As a direct and proximate result of the defendant's negligence, carelessness, and/or intentional misconduct, plaintiff sustained the injuries set forth in this Complaint.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of the jurisdictional threshold for compensatory damages, punitive damages, delay damages, interest, and allowable costs of suit.

**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**

      /s/ BETHANY NIKITENKO

MARK W. TANNER     58738
BETHANY NIKITENKO   206374
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
215-567-8300
mtanner@feldmanshepherd.com
bnikitenko@feldmanshepherd.com

**GREENBLATT PIERCE FUNT and FLORES, LLC**

      /s/ PATRICIA PIERCE

PATRICIA PIERCE, ESQUIRE
RONALD GREENBLATT, ESQUIRE
123 South Broad Street, Suite 2500
Philadelphia, PA 19109
215-735-1600
p.pierce@gpfflaw.com
ron@gpfflaw.com