**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 19-20934(FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| ARCHDIOCESE OF PHILADELPHIA, | : | |
| | : | |
| Defendant. | : | |

**WOLFSON, Chief Judge:**

Before the Court is a motion to dismiss filed by Defendant Archdiocese of Philadelphia ("Archdiocese" or "Defendant"), seeking dismissal of all claims in the Complaint of Plaintiff John Doe ("Doe" or "Plaintiff") for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). The case arises from claims filed by Plaintiff, a former parishioner of Defendant Archdiocese, who was sexually abused by Father James J. Brzyski ("Brzyski"). For the reasons set forth below, I find that the Court does not have personal jurisdiction over Defendant, but rather than dismiss the case, I will transfer this matter to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Archdiocese, was, and continues to be, an unincorporated ecclesiastical territory of the Roman Catholic Church with its principle place of business in Philadelphia, Pennsylvania. (Compl. ¶ 4; Def. Mot. to Dismiss ("Def. Mot."), at 3.) At all relevant times, Plaintiff was a parishioner of the Archdiocese at the parish of St. John the Evangelist located in Lower Makefield, Pennsylvania, where he attended grade school, served as an altar boy, and worked in the rectory. (Compl. ¶ 7.)

1

Brzyski was a priest assigned to St. John the Evangelist in 1977 at the direction of the Archdiocese. (Compl. ¶ 34.)

Plaintiff and his siblings grew up attending Catholic schools in the Archdiocese of Philadelphia. (Pl. Br. in Opp. to Mot. to Dismiss ("Pl. Opp. Br."), Ex. B, ¶ 9.) Plaintiff met Brzyski in 1977, who then became a "fixture" in his family's home, routinely celebrating Mass in their home. (Pl. Opp. Br., Ex. B, ¶¶ 12, 16.) Plaintiff recalls being taught by his parents and the nuns, who were his teachers at school, to bow before Brzyski to receive his blessing and to believe that Brzyski had the authority to absolve Plaintiff of his sins and assure his eventual entry into Heaven. (Pl. Opp. Br., Ex. B, ¶ 15.)

In 1978, when Plaintiff was approximately 10 years old, he began serving as an altar boy. At that time, Plaintiff claims that Brzyski began sexually grooming him. (Compl. ¶ 41.)  Plaintiff alleges that this sexual abuse continued through 1982, escalating from fondling to oral and anal rape. (Compl. ¶ 45.)  Plaintiff charges that the abuse continued even after Brzyski left St. John the Evangelist in 1981. (Pl. Opp. Br., Ex. B, ¶ 30.) The abuse allegedly took place in the sacristy, rectory, and office of St. John the Evangelist, and on regular trips to a beach home in Forked River, New Jersey. (Compl. ¶ 46.) Plaintiff alleges that Brzyski took Plaintiff and other young boys to the shore house for about four to five days each month during the summer for three successive years. (Pl. Opp. Br., Ex. B, ¶ 26.)  In 1982, when Plaintiff was 14 years old, he disclosed the abuse to his parents, who then alerted Archdiocese personnel. (Pl. Opp. Br., Ex. B, ¶ 33.)  Plaintiff recalls a conference call with Archdiocese personnel to discuss the abuse and his refusal to later speak to persons claiming to be representatives of the Archdiocese when they came to his home. (Pl. Opp. Br., Ex. B, ¶¶ 33-34.) Brzyski was eventually laicized 23 years later in 2005. (Def. Mot., at 4 n. 5.)

Plaintiff alleges that Defendant failed in its duty to provide a reasonably safe environment for the students, including Plaintiff, left in its custody, care, and/or control. (Compl. ¶ 16.)  The Complaint asserts that Defendant employed, retained, and assigned individuals, who Defendant knew, and/or had reason to know, to be pedophiles, child molesters, sexual predators, and mentally ill. (Compl. ¶ 24.) Further, according to Plaintiff, that Defendant "regularly, routinely, and/or frequently" assigned, re-assigned, or transferred priests who had been credibly accused of molesting children to new assignments where they retained access to, and control over, children. (Compl. ¶ 20.)  Plaintiff also claims that Defendant failed in its duty to take reasonable steps to ensure that the priests whose duties placed them in close proximity to children were psychologically fit to perform those duties without jeopardizing the safety of the children. (Compl. ¶ 28.)  Plaintiff avers that Defendant deliberately sought to conceal known abuse by priests and other persons in the employ or service of the Archdiocese knowing that they exposed children, including Plaintiff, to a significant risk of serious physical and psychological harm, such as a significant risk of rape, anal rape, and sodomy. (Compl. ¶¶ 32-33.) Plaintiff claims that Defendant employed strategies, including sham investigations, failing to interview witnesses, failing to inform parishioners of allegations, refusing to notify law enforcement, destroying record evidence of misconduct, and failing to enforce limitations supposedly imposed on priests diagnosed as pedophiles. (Compl. ¶ 32.)

In his Complaint, Plaintiff asserts a claim of vicarious liability (Count I) under New Jersey common law, alleging that Defendant is liable for the acts committed by Brzyski while he was acting as the agent, servant, and/or employee of Defendant pursuant to Restatement (Second) of Agency § 219. (Compl. ¶ 55.) Plaintiff also asserts a common law claim of negligence (Count II), alleging that Defendant failed in its duty, pursuant to Restatement (Second) of Torts §§ 314(A),

315, to supervise Brzyski, to investigate allegations of childhood sexual abuse, and to implement appropriate policies and procedures to prevent such abuse. (Compl. ¶¶ 62-87.) In the instant matter, Defendant moves to dismiss for lack of personal jurisdiction.

## II.    STANDARD OF REVIEW

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). Thus, the central inquiry is whether Defendant has "certain minimum contacts with…[New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(internal quotations and citations omitted). In analyzing personal jurisdiction, the Court must determine whether it has general or specific jurisdiction over Defendant.

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc.*, 384 F.3d at 97; *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Still, plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper." *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)). In the context of assessing personal jurisdiction, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other

evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2015 U.S. Dist. LEXIS 116861, at *5-6 (D.N.J. Sept. 2, 2015) (quoting *Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)).

## III.   ANALYSIS

### A.   Personal Jurisdiction

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37-38 (3d Cir. 2015) (citing *Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). Here, Plaintiff argues only that the Court has specific jurisdiction over Defendant. Specific jurisdiction exists over a non-resident defendant where the plaintiff's claim "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)); *see Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'") (quoting *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Courts apply a three-part test to determine whether specific jurisdiction over a non-resident defendant exists: "First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Petrucelli v. Rusin*, 642 F. App'x 108, 110 (3d Cir. 2016) (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). In establishing specific jurisdiction, it is not necessary that the defendant be physically located in the forum state while committing the

alleged act. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Even a single act may satisfy the "purposeful availment" requirement if it creates a "substantial connection" with the forum. *Id.* at 476 n.18.

"Under the purposeful availment inquiry, the act itself must deliberately target the forum state and establish such a relationship between the defendant and the forum such that it is reasonable to require the defendant to answer for such acts in that state." *Walburn v. Rovema Packaging Machs., L.P.*, No. 07-3692 (PGS), 2008 U.S. Dist. LEXIS 25369, at *16 (D.N.J. Mar. 28, 2008). Importantly, the cause of action "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 284).

Here, Plaintiff argues that Defendant has substantial contacts with New Jersey as Defendant allegedly purposefully transferred pedophile priests to New Jersey, accepted pedophile priests from New Jersey, and knew that its priests were transporting children to New Jersey for the purpose of sexually abusing them, but failed to prevent the abuse or protect the children. (Pl. Opp. Br., at 17.) Plaintiff also argues that Defendant's past ownership or control of seven different properties located in New Jersey establishes the necessary minimum contacts with the forum state. (Pl. Opp. Br., at 18.) Furthermore, Plaintiff claims Brzyski's sexual abuse of Plaintiff numerous times in a home in Forked River, New Jersey, should be sufficient to establish personal jurisdiction, because Brzyski was an agent of Defendant. (Pl. Opp. Br., at 17.) In response, Defendant argues that none of its conduct deliberately targeted New Jersey, the Complaint does not allege any of Defendant's conduct took place in New Jersey, nor do the claims arise out of Defendant's contacts with New Jersey. (Def. Mot., at 15.) Defendant also claims the unilateral acts of a third party, Brzyski, cannot create jurisdiction. (Def. Mot., at 14.) I agree with Defendant's position.

At the time of the abuse, Plaintiff was a resident of Pennsylvania and a parishioner of a Pennsylvania church in the Archdiocese of Philadelphia, an entity whose principle place of business is Pennsylvania. Plaintiff does not allege that any negligent conduct on the part of Defendant took place in New Jersey.  Defendant did not purposefully avail itself of the privilege of conducting activities with New Jersey, thus invoking the benefits and protections of its laws. *Int'l Shoe*, 326 U.S. at 319. The policies and patterns of behavior set forth in the Complaint describe the conduct of priests and parishes under Defendant's control in the Archdiocese of Philadelphia. Defendant's supervisory duties did not, as Plaintiff suggests, intentionally target New Jersey. Moreover, the schools and parishes under the control of Defendant are located in Pennsylvania. St. John the Evangelist, the church attended by Plaintiff and his family, and where Brzyski was assigned during the relevant period, is located in Bucks County, Pennsylvania. Nowhere in the Complaint does Plaintiff allege that the employment and assignment decisions made by the Archdiocese took place in New Jersey or were carried out in New Jersey. Indeed, such decisions were concerning the schools and parishes under the control of the Archdiocese of Philadelphia in Pennsylvania.  Plaintiff also does not allege that Defendant directed Brzyski, in his capacity as a priest, to conduct church-related activities in New Jersey, or to take Plaintiff to New Jersey for any purpose.  Defendant's alleged knowledge of Brzyski's conduct, or the conduct of other priests in transporting children to New Jersey for the purpose of sexual abuse, is insufficient to establish jurisdiction because "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)(internal citations omitted).  Plainly, Plaintiff failed to establish that Defendant has the requisite minimum contacts with New Jersey for this Court to find specific jurisdiction in connection with Plaintiff's claims.

As to the second prong of the test, the claims made by Plaintiff do not arise out of Defendant's alleged contacts with New Jersey.  Litigation "arises out of" a contact if two requirements are satisfied: first, "but-for" the activity, the litigation would not have arisen, and second, the jurisdictional exposure resulting from a contact must be closely tailored to the contact's substantive obligations. *O'Connor*, 496 F.3d at 323.  Here, while the transfer of alleged pedophile priests to and from New Jersey and the ownership of property in New Jersey do invoke the benefits and protection of New Jersey's laws on Defendant's part, such connection is not related to the claims asserted by Plaintiff.  Plaintiff does not allege that a transfer of Brzyski by the Archdiocese to or from New Jersey resulted in the alleged sexual abuse detailed in the Complaint. Moreover, these claims do not arise out of Defendant's alleged transfer of pedophile priests to New Jersey or acceptance of pedophile priests from New Jersey, a troubling pattern detailed in a 2005 grand jury report.[1] (*See* Def. Mot., Ex. C, at 4-5.) In addition, none of the seven properties previously owned by Defendant in New Jersey are connected to the claims raised in the Complaint.  In fact, Plaintiff does not allege he was assaulted in any of these properties.[2]

The Court further declines to extend specific jurisdiction over Defendant under the agency theory.  Plaintiff argues that Defendant is vicariously liable for Brzyski's conduct because Brzyski was acting as an agent of Defendant at the time he allegedly sexually abused Plaintiff in New

---

[1]     The 2005 report describes a Philadelphia Grand Jury investigation into child sex abuse in the Archdiocese of Philadelphia. The report provides a thorough account of how at least 63 different priests sexually abused hundreds of children and the alleged cover-up of said abuse by Archdiocese officials. It also contains 28 case studies of priests, including a timeline of Brzyski's tenure with the Archdiocese, the innumerable accusations against him, and internal Archdiocese documents detailing the Church's response to his conduct.

[2]     As Defendant's conduct does not meet the first two requirements of the test to determine specific jurisdiction, it is unnecessary to inquire whether the exercise of jurisdiction would otherwise comport with fair play and substantial justice.

Jersey. (Pl. Opp. Br., at 14.)  However, Plaintiff does not allege that Defendant directed Brzyski to abuse Plaintiff or to take Plaintiff into New Jersey.  In that regard, courts have, in most instances, held that a priest who sexually abuses another is not acting within the scope of his employment. *See Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 Del. Super. LEXIS 162, at *35 (Del. Super. Apr. 26, 2010); *see, e.g.*, *Doe v. Liberatore,* 478 F. Supp. 2d 742, 758 (M.D. Pa. 2007) ("[I]t is clear that [the priest's] sexual molestation of Plaintiff was not within the scope or nature of his employment as a priest. Indeed, '[t]he activity of which [Plaintiff] now complains is wholly inconsistent with the role of one who is received into the Holy Orders as an ordained priest of the Roman Catholic Church.'"); *R.A. ex rel. N.A. v. First Church of Christ,* 748 A.2d 692, 700 (Pa. Super. Ct. 2000) (affirming dismissal of claim against church based on alleged sexual misconduct by minister and holding that "[n]othing about [the priest's] sexual abuse of R.A. had any connection to the kind and nature of his employment as a minister").  Without an agency connection, Brzyski's conduct in transporting Plaintiff to New Jersey for the purposes of sexual abuse simply does not subject Defendant to the personal jurisdiction of this Court. The unilateral activity of a third party cannot satisfy the requirement that Defendant have minimum contacts with the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Indeed, Plaintiff does not allege that Brzyski's conduct was a result of deliberate direction by Defendant. Thus, only Defendant's conduct is relevant in a determination of personal jurisdiction, not that of Brzyski.

Therefore, the Court finds that Plaintiff has failed to establish that Defendant's alleged contacts with New Jersey establish the minimum contacts necessary to support specific jurisdiction in this case.

**B.      Jurisdictional Discovery**

The Court declines Plaintiff's request to conduct discovery on other contacts Defendant may have had with New Jersey.   Jurisdictional discovery is generally permitted unless the plaintiff's claim is "clearly frivolous." *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc.*, 318 F.3d at 456 (internal citations and quotations marks omitted).   "Jurisdictional discovery should not…serve as a 'fishing expedition' into the underlying merits, all while 'under the guise of jurisdictional discovery.'" *Marchionda v. Embassy Suites, Inc.*, 122 F. Supp. 3d 208, 211 (D.N.J. 2015) (quoting *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011)). Here, Plaintiff offers no facts which suggest with "reasonable particularity" that the requisite contacts exist, but only that he should be granted leave to conduct discovery on the very broad topic of the "transfer of pedophile priests, including Father Brzyski, to and from the state of New Jersey" and "other contacts [D]efendant may have with New Jersey." (Pl. Opp. Br., at 19.) This lone statement does not support jurisdictional discovery.   Although the Court is mindful of the permissive standard for the grant of jurisdictional discovery, this is one of the facially insufficient circumstances in which discovery is unwarranted. *See, e.g.*, *Kabbaj v. Simpson*, 547 F. App'x 84, 86 n.5 (3d Cir. 2013) ("The District Court's denial of…discovery was not an abuse of discretion because…[plaintiff] failed to make out a prima facie case that could justify jurisdictional discovery.").[3]

---

[3]      Plaintiff asks that I permit him to amend his Complaint to include additional allegations such that he can establish personal jurisdictional in the event I am inclined to find that this Court lacks personal jurisdiction over Defendant.  Plaintiff's argument misses the mark.  To the extent

### C.      Transfer to Proper Venue

Section 1406 of Chapter 28 of United States Code allows for "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  "Dismissal is considered to be a harsh remedy . . . and transfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." *NCR Credit Corp. v. Ye Seekers Horizon*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). *See also Markey v. Fastuca*, NO. CIV. 05-1450, 2006 U.S. Dist. LEXIS 10480, *8-9 (D.N.J., Feb. 23, 2006).  Because Plaintiff brought this case in the incorrect forum, it is appropriate for the Court to transfer it to the forum where it could have originally been brought. *See* 28 U.S.C. § 1406(a); *see also Gehling v. St. George's Sch. Of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985) (District Court's finding that it did not have jurisdiction over the defendant does not prevent the case from being transferred to the forum where it could have originally been brought).  Here, the Court finds that venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §§ 1391(b)(1)-(2), because Defendant's principle place of business is in that district and a "substantial part of the events or omissions giving rise to the claim occurred" in that district. *See* 28 U.S.C. §§ 1391(b)(1)-(2).

---

that Plaintiff has any supporting evidence to show the requisite New Jersey contacts on Defendant's part, he must present it on this motion with certifications and the alike.  However, he has come up short.  Amending the pleadings pursuant to Rule 15(a), on the other hand, concerns only the allegations with respect to Plaintiff's underlying claims, not jurisdictional facts.  As such, Plaintiff's request for leave to amend is denied.

## IV.     CONCLUSION

For the foregoing reasons, the Court does not have personal jurisdiction over Defendant.

In lieu of dismissal, the Court will transfer this matter to the United States District Court for the

Eastern District of Pennsylvania.


DATED:  June 22, 2020                                    /s/ Freda L. Wolfson
                                                        Hon. Freda L. Wolfson
                                                        U.S. Chief District Judge